WEBB ET AL. v. HOLT ET AL.

1. **Pension:** EXEMPTION: WHEN LIABLE TO ATTACHMENT.  Where a pensioner received the pension due him under the acts of Congress, on account of physical disability received while serving as a soldier in the late war, in the form of a draft, drew the money on the draft and deposited the same in a bank to his credit, it was not exempt, in the hands of the bank, from the process of attachment for the pensioner's debts.  ROTHROCK and BECK, JJ., *dissenting*.

*Appeal from Scott Circuit Court.*

FRIDAY, MARCH 24.

THE plaintiffs commenced suit by attachment against the defendant, D. A. Holt, and garnished the German Savings Bank of Davenport.  Subsequently the plaintiffs recovered judgment against the defendant in the main action.  The cause was tried, as to the garnishee, by the court, and judgment was rendered against the garnishee for $300.  The defendant and the garnishee appeal.

The facts are stated in the opinion.

*Martin, Murphy & Lynch*, for appellants.

*Bills & Block*, for appellees.

DAY, J.—The court found the facts in the case as follows:
"1. That on the 15th day of March, 1880, the defendant, D. A. Holt, received from the government of the United States the sum of $2,029.82, in form of a draft from a pension agent of the government, as a back pension due him under the acts of Congress, on account of physical disabilities received while serving as a soldier in the late war.  He drew the money on said draft, and used a part, and deposited the balance as stated in the next finding.

"2. That of said pension, on the 29th day of March, 1880, said Holt deposited the sum of $700 in the German Savings

Bank of Davenport, Iowa; that said money was placed in said bank that the same might draw interest and be taken from the said bank from time to time, for the support of the defendant and his family; that the said Holt at the time of the deposit, before and since, resided in Moline, in the State of Illinois, while plaintiffs resided in Davenport, Iowa; that on the 28th day of October, 1880, and before the garnishment, he drew as interest on said deposit, $17.50.

"3. That after the service of the garnishment, by consent of plaintiff, the defendant was permitted to draw from the bank the sum of $300, of said $700, but this was done simply because $400 would be sufficient to satisfy plaintiffs' demand if found liable therefor.

"The court found, as a conclusion of law, that the money was not, in the hands of the bank, exempt under section 4747 of Title 57, of the Revised Statutes of the United States, from the process of attachment, for the reason that said act only applies to pension money while in course of transmission, and did not apply after a pension was received and placed, as this was, on deposit in a bank."

The defendants claim that the money in question is exempt from attachment under section 4747 of the Revised Statutes of the United States, which is as follows: "No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office or any officer, or agent thereof, or is in course of transmis sion to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

The appellants cite and rely upon *Eckert v. McKee*, 9 Bush. (Ky.), 355; *Hayward v. Clark*, 50 Vermont, 612, and *Folschow v. Werner*, in the Wisconsin Supreme Court, 51 Wis., 85. In *Haywood v. Clark*, the defendant received a check or draft from the United States pension agent, and gave it to his wife, who, by his advice, passed it to

one Pierpont, and took his note therefor. A creditor sought to charge Pierpont as a trustee of the defendant. The court held that while the check or draft from the pension office was the form of the defendant's claim, and while that constituted the matter of *credit* in the sense of the trustee law of the State, it, or the value represented by it, could not be reached by any creditor by any process or proceeding; that the defendant had the right to give the draft to his wife, and the legal title passed to her by gift; that the only ground upon which Pierpont could be charged as for a debt due from him, on the score of the draft, was the note given to the wife, and that, upon the facts shown the note did not render him liable as on a note payable and delivered to the husband. It is evident that this holding determined the case, and, perhaps, correctly, for it may well be decided that, until the original draft, through which the money is transmitted is cashed, the money, in the language of the statute, "is in course of transmission to the pensioner," and that he might then, without any fraud upon his creditors, give it to his wife. The court, however, went further, and declared what it would feel it to be its duty to hold, in order to protect the pension from process, did the case require it. What is further said in the opinion, it appears to us, can be regarded only as *dictum*.

In the case of *Eckert v. McKee*, Adams, the pension agent, at Lexington, drew his check on the United States Assistant Treasurer, for a pension due to Mrs. M. H. McKee. The check was payable to the order of Mrs. McKee. On the same day, one J. T. Vanorsdale brought the check with the name of Mrs. McKee indorsed thereon, to the office of the pension agent, who went with Vanorsdale to a bank, and introduced him, when the money was paid to him. The creditors of Mrs. McKee sought to subject a part of the money to the payment of their debts. It does not appear from the statement of facts, whether the money had ever, in fact, come into the possession of Mrs. McKee, or was still in the hands of Vanorsdale.

Webb v. Holt.

The court, without citation of authority or reasoning to support the determination, concluded that the fund was not liable to attachment. If the money had not come into Mrs. McKee's possession, it might be regarded as in course of transmission, and hence as coming under the protection of the statute. The case of *Folschow v. Werner* is the only one, in which it distinctly appears from the facts, that the question of exemption, after payment to the pensioner, was involved. In that case it was held that the pension money was exempt from liability for the pensioner's debts. In the opinion the case of *Eckert v. McKee*, is cited and relied upon. The reasoning of the court is not, to our minds, satisfactory. Upon the other hand, the appellee cites and relied upon *Kellogg v. Waite*, 12 Allen, 529, and *Spelman v. Aldrich*, 126 Mass., 113. In *Kellogg v. Waite* the money had been paid to the agent of the pensioner before the statute in question was enacted, and the court held that it could not be controlled by it. In *Spelman v. Aldrich* the court, without any reasoning, and relying solely upon *Kellogg v. Waite*, held that even if, under the statute in question, the pension was exempt while it remained in the form of a pension check, the exemption certainly ceased after the money was drawn upon the check. The question resting in so unsatisfactory a situation, upon authority, we feel at liberty to determine it wholly upon principle. The section, by its direct terms, is limited to money in two conditions, money due to a pensioner, and money to become due to a pensioner. The pension is a fixed amount of money payable at stated periods. When the period for payment has elapsed, the money is due; before such period has elapsed, the money is to become due. When the money has actually come into the hands of the pensioner, it ceases to be money due, or to become due, and then, it seems to us, the statute ceases to apply to it. It is said, however, that the statute provides that the money shall inure wholly to the benefit of the pensioner. In our opinion it does inure wholly to the benefit of the pen-

sioner, when it comes into his possession, and becomes subject to his control, under the laws of the State, in the same manner as other property owned by him. The provision of the statute, "whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto," cannot be ignored in placing a construction upon the statute. This, it seems to us, imposes a limitation upon a provision which would otherwise be general, and determines the peculiar situation in which money due, or to become due, shall be exempt from seizure. The enumeration of particulars implies a negation of the general. If the statute exempts money paid to a pensioner, even after it comes into his hands, the particular enumeration of conditions under which the money would be exempt, becomes unnecessary and unmeaning, and might as well be eliminated from the statute. In our opinion, the purpose of the statute is to render it certain that the government's bounty shall come into the hands of its beneficiary, and shall not be seized for its debts before it reaches him. If it had been the intention to impress upon it a different character, after it comes into the hands of the pensioner, from other property owned by him, it seems to us that that intention would have been expressed in a manner more certain and direct. Indeed, it may well be doubtful, whether the ordinary incidents of property which has vested in a citizen of a State, can be controlled or modified by federal legislation.

In our opinion the statute in question ceased to be applicable to the money when it was paid to the pensioner.

AFFIRMED.

ROTHROCK, J., *dissenting.*—I cannot concur in the foregoing opinion of the majority of the court. A pension is granted to a soldier because of some physical disability rendering him unable to earn a living by manual labor. It is intended for the support of himself and family. In case of his death, it is

Webb v. Holt.

continued for the benefit of his widow and orphan children under sixteen years of age. The statute provides that it shall not be seized for debt before it is received by the pensioner, but shall inure wholly to his benefit. The last provision excludes the idea that it can be seized after it comes into his possession. The provision that it shall inure wholly to his benefit, is intended to mean something. If the opinion of the majority is correct, it is mere surplusage and means nothing, for the money is fully protected until it comes into the hands of the pensioner by the previous provisions of the section. This last provision is used in the same connection as that which prohibits the seizure by creditors before it comes into the possession of the pensioner, and when in the same clause and sentence of the statute it is provided that it shall inure wholly to the benefit of the pensioner, the exclusion of creditors could be made but little plainer if the section had concluded with the words, "and not for the benefit of creditors." It is said, in the majority opinion, that the money does inure wholly to the benefit of the pensioner when it comes into his possession and becomes subject to his control. In the general sense, this is true, but, it appears to me, the opinion ignores the thought that this is a statute of exemption and its very object and purpose is to prevent creditors from seizing pension money.

It is conceded by the majority that the case of *Folschow v Werner*, 51 Wis., 85, is in point. In my judgment the opinion in that case is correct, and should be followed, especially in view of the well established rule that exemption laws are to be liberally construed in favor of the debtor.

In my opinion the judgment should be reversed, and I am authorized to say that Mr. Justice BECK concurs in this dissent.