## CHARLESTON.

HISSEM et al. v. JOHNSON et al.

Submitted February 2, 1886.—Decided February 20, 1886.

(JOHNSON, PRESIDENT, absent.)

Where a pensioner receives pension-drafts under the act of Congress and transfers said drafts or the proceeds thereof to a third person, who in consideration thereof conveys or agrees to convey to the wife of the pensioner a tract of land ; and thereafter a suit is brought by judgment-creditors of the pensioner, whose judgments existed at the time said pension-drafts were received, HELD:

> Under sec. 4747 U. S. Rev. Sts. said land is not liable for the payment of said judgments.

D. F. Pugh and T. J. Hugus for appellants.

Dave D. Johnson for appellee.

SNYDER, JUDGE :

Suit in equity brought in October, 1882, in the circuit court of Tyler county by Levi Hissem and others against D. D. Johnson and M. M. Johnson, his wife, and others. The plaintiffs are judgment-creditors of the defendant, D. D. Johnson, and the object of the suit is to subject a tract of about seventy one acres of land in said county to the payment of the plaintiff's judgments. The said land was owned by Abraham Johnson at the time said judgments were recovered and the legal title thereof is still held by him. By written contract dated September 14, 1880, the said Abraham Johnson in consideration of $4,200.00, of which $3,500.00 was paid at said date and the residue to be paid in instalments at one, two and three years thereafter, sold the said land to the defendant, M. M. Johnson, and bound himself to convey the same to her by deed retaining therein a lien for the deferred payments. The deferred payments except about $200.00 were afterwards paid.

The plaintiffs allege in their bill, that all the purchase-money for said land was paid out of moneys belonging to the

─────────────

*Related to some of the parties.

defendant, D. D. Johnson, and that the agreement for the
conveyance of the land by the said Abraham to the said M.
M. Johnson was arranged and procured by the said D. D.
Johnson with intent to delay, hinder, and defraud his
creditors especially the plaintiffs, and the same is therefore
void.

The defendants, D. D. and M. M. Johnson, by their joint
answer admit the existence of the plaintiffs' judgments, but
deny they operate as liens upon said land. In reference to
to the purchase and payment of said land they aver, that the
said D. D. Johnson by reason of wounds received while a
soldier in the service of the United States government during
the late war was awarded a pension by said government; that
in July, 1880, he received on account of said pension, inclu-
ding arrearages, the sum of $4,000.00, of which he gave to
his wife the defendant, M. M. Johnson, $3,500.00 to be in-
vested by her in a house for herself and children; that ac-
cordingly she with his consent did enter into the contract
of September 14, 1880, with said Abraham Johnson for the
purchase of said seventy one acres of land; that at the time
of said purchase she paid to said Abraham out of said pen-
sion-money $3,500.00 and executed to him her three notes
for the deferred payments as provided for in said contract,
which notes except about $200.00 she has since paid by pen-
sion-checks received by said D. D. Johnson from time to time,
and which he gave to her for the purpose of paying said
notes. They aver that "not one cent has been paid on said
land except the identical money or checks, which respondent,
D. D. Johnson, received as his said pension-money." * *
"And said respondent having given said money to his wife, and
it having been invested by her, and the said pension-money
paid over to her into said farm by her and for her use and not
absorbed by or combined with any other money whatever,
but the said farm being the representative now of said pen-
sion money, and no other money whatever, is free and ex-
empt under the law and can not be held subject to said judg-
ments or any other debts of the said D. D. Johnson."

There is a general replication to said answer. The plain-
tiffs proved by the said Abraham Johnson, that the contract
for the purchase of the land was made with himself and Dan

and his wife, Dan acting as the agent for his wife. In answer to the question, "How was the $4,000.00 paid?" the witness, says: "The first was paid in a check on a bank, and the balance was paid in government checks. I don't recollect whose names were on the first check. The government checks were payable to Dan. D. Johnson, I think; the first check was for $3,000.00 or $3,500.00, I think."

Question.—" Was not the first check the individual check of Daniel D. Johnson?

Answer.—" Well, I can't tell exactly how that was, but my impression is that that was a government check.

Question.—" Whose money was it then which paid for the land?

Answer.—" My understanding is, that it was the money which Dan. got for his pension, all of it that he paid, notwithstanding how it was paid. I think it was all paid in government checks."

CROSS-EXAMINED BY D. D. JOHNSON.

Question.—" Has any money been paid on the land except out of the pension money?

Answer.—" No, I don't think there has.

Question.—" Were all payments on the deferred notes made by the delivery to you of government checks?

Answer.—" Yes sir, they were all government checks."

The cause was heard August 28, 1884, and the court being of opinion that the land " was purchased by the defendant M. M. Johnson with the proceeds of pension checks received by the defendant D. D. Johnson from the United States " and transferred by him to the said M. M. Johnson, and that said pension and checks are, by the laws of the United States, exempt from legal process to subject the same to the payment of the debts of the said pensioner, entered a decree of said date dismissing the plaintiff's bill, and from said decree the plaintiffs obtained this appeal.

The only question to be determined here is, whether or not the appellee, M. M. Johnson, is entitled to hold the said seventy one acres of land free from the judgments of the plaintiffs recovered against the said D. D. Johnson. And the solution of this question depends upon the true construction of sec. 4,747 of the U. S. Rev. Statutes as applied to the facts in this cause. The said statute is as follows:

" No sum of money due, or to become, to any pensioner, shall be liable to attachment, levy or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer, or agent thereof, or in course of transmission to the pensioner entitled thereto, but shall enure wholly to the benefit of such pensioner."

The appellants contend, that the sole purpose and policy of this statute is to protect pension money from being taken or seized by any process whatever, either while in the custody of the pension office, its officers or agents, or while in transit from them to the pensioner; and that to entitle the money to this protection it must be pension money either " due " or to "become due" from the United States. In support of this position the appellants rely upon the following decisions: *Cranz* v. *White,* 27 Kans. 319; *Webb* v. *Holt,* 57 Iowa 712; *Kellogg* v. *Waite,* 12 Allen 529; and *Jardain* v. *Fairton, &c.,* 44 N. J. L. 376.

In *Cranz* v. *White, supra,* the question decided was, that " where a pensioner receives pension drafts and sells the same to a bank in the usual course of business, which bank buys the drafts and credits the general account of the pensioner with the amount thereof, and from time to time thereafter a large portion of such account is checked out, *held,* that the balance due on such general account is subject to garnishment."

In *Webb* v. *Holt, supra,* it was decided, that where a pensioner received a pension draft on account of a pension due him and deposited said draft in a bank to his credit, the money was not exempt, in the hands of the bank, from the process of attachment for the pensioner's debts.

The court held in *Kellogg* v. *Waite, supra,* that the money was not exempt, because it had come to the hands of the agent of the pensioner before the act of congress was passed, and that therefore the statute had no effect in that case.

The *syllabus* in *Jardain* v. *Fairton, &c., supra,* is as follows: " Money due for pensions, while it remains in the hands of the disbursing officer or agent for distribution, or while in course of transmission to the pensioner, is not liable to be seized by creditors under any legal process. After it has come to his hands it is so liable, like any other funds of the debtor."

Such is the substance of the claim and authorities relied on by the appellants. On the other hand, the appellees insist that the statute must be construed liberally in favor of the pensioner, and that so construed, according to its plain intent and policy, the pensioner may give the pension-checks or the proceeds thereof to his wife without fraud upon the rights of his creditors; and that pension-money in the hands of the pensioner, or invested for his use and benefit, so long as the identity of the fund is maintained, is exempt from seizure under legal process for the payment of the pensioner's debts. To sustain this position they cite, *Hayward* v. *Clark*, 50 Vt. 612; *Folschow* v. *Werner*, 51 Wis. 85; and *Eckert* v. *McKee*, 9 Bush. 355.

The decision of the court in *Hayward* v. *Clark, supra,* is stated in the *syllabus* as follows : "A pensioner of the United States, received a draft on account of his pension from an United States pension-agent, and gave the same to his wife, who by his advice passed it to P., who gave her his note therefor payable to her order, understanding that it was for defendant's pension, and that defendant and his wife wanted it used for the benefit of defendant's family, or to pay for homestead if they purchased one. *Held,* that the legal title to the draft passed to the wife by gift, and that P. was not chargeable as trustee of the defendant.

*Semble,* that as the money was to be kept as a fund or invested for use as current circumstances might require, it was exempt from attachment by trustee or other process, under sec. 4747, U. S. Rev. Sts."

In *Folschow* v. *Werner, supra,* the court *held* : "Under sec. 4747 R. S. of U. S., the money received by a pensioner of the United States in payment of his pension, and remaining in his possession, cannot be siezed on process against him for debt."

*Eckert* v. *McKee, supra,* decides that, 1.—Pension-money received from the United States is not liable to attachment, levy, or seizure by or under any legal or equitable process whatever. 2.—Pension money cannot be subjected to the payment of the debts of the pensioner."

It is claimed that this last mentioned decision has been overruled by a decision of the court of appeals of Kentucky

made in 1883, in which that court held that "pension-money is not exempt from seizure for the pensioner's debts after it has come into his hands." *Moxley* v. *Andrews*, 82 Ky., not yet published.   As I have not the report of this case, it is impossible for me to determine to what extent, if at all, it is in conflict with *Eckert* v. *McKee, supra*; but apperently, it does qualify, if it does not overrule the second of the propositions above quoted from that case.   In other respects I I think the two cases may be reconcilable.

In *Spelman* v. *Aldrick*, 126 Mass. 113, the court decided, that when a husband received a pension-check, which was endorsed by him and handed to a third person, who, with the consent of the pensioner and his wife, deposited it in a bank to the credit of the wife, the proceeds of the check so deposited were liable to attachment by the husband's creditors.   This decision is based upon the statutes of Massachusetts, which forbid a married woman from acquiring property by gift from her husband.   The proceeds of the check was treated as the money of the husband and as such liable for his debts.

This brief review of the decisions shows, that they are about equally divided and in irreconcilable conflict in many respects though not in all.   It seems that all the cases agree, that the pension-money is exempt from any legal or equitable process whatever until it is actually paid to and received by the pensioner.   That although he may have received and have in his possession the pension draft or check, such draft or check in his hands can not be reached by any legal process.   But when the pensioner has actually realized or collected the money on the check or draft and has it in his possession or to his credit in bank, whether it is then exempt from legal process, is where the conflict in the cases begins, some holding that it is not then exempt, and others holding not only that it is" still exempt but that it remains exempt even after it has been invested for the use of the pensioner so long as the investment can be identified as its proceeds.

This is a federal statute of which the Federal Supreme Court is in a proper case the ultimate expounder, but it seems that it has never been construed by that or any other federal court and as the State decisions are so conflicting and unsatisfactory, we

are left free to interpret and apply said statute according to our own views of its purposes and policy.

I think the fair and reasonable conclusion from the proofs in the case before us would justify us in finding, that the land in controversy was paid for with pension-drafts or government-checks issued to D. D. Johnson on account of a pension due him and passed by him to his wife, or more probably passed directly to the vendor, Abraham Johnson, with the understanding and agreement reduced to writing at the time, that the land should be conveyed to the wife as her separate estate. The vendor testifies positively that the deferred payments were all made with government-checks. And while in his first answer as to the cash-payment, he says, it was paid in a check on a bank, yet in subsequent answers he says, he can not tell exactly how this payment was made, "but my impression is that it was a government-check;" afterwards he adds, "I think it was all paid in government-checks." This witness was introduced by the plaintiffs and these answers were given to questions propounded by them. This testimony then must be construed, at least, as favorably to the defendants as the plaintiffs, and being so construed, it seems to me, that we may reasonably conclude from it, that all the purchase-money was paid for in pension-drafts or checks. If this interpretation of the transaction is admissible, then, all the cases are agreed, that the consideration paid for the land was exempt from legal or equitable process for the debts of D. D. Johnson. Until the pension check is paid and the money therefor is actually paid to and received by the pensioner, the money is still due to him from the government, and is by the express terms of the statute exempted from such process.

But suppose this is not the true view of the facts of this case, and that, according to the pleadings and proofs, the land was not paid for with pension-drafts, but was paid for with the identical proceeds derived from said drafts. So regarding the facts, the case still does not come in conflict with the actual questions decided in any of the cases before referred to, though it does come in conflict with the *dicta* and principles discussed in several of them. Taking the cases which hold that, after the pensioner has actually received the

money for his pension-drafts, the money is liable for his debts, it will be found that all of them without exception were cases in which, at the time the process issued, the money was still in the hands or under the control of the pensioner, and in none of them had he disposed of, by gift or otherwise, the money sought to be subjected to legal process by his creditors. In the case before us, the money had been disposed of and actually passed from the possession of the pensioner long before this suit was instituted. It had passed into the hands of Abraham Johnson beyond the reach of any legal process whatever by the creditors of the pensioner. It is not attempted to be reached by this suit, but the only effort is to subject the land in the hands of a third party, the wife of the pensioner, upon the sole ground that the pension-money so disposed of was the consideration paid for the land. It is, therefore, a very different case from any of those relied on by counsel for appellants.

Let us now revert to the statute itself and endeavor to ascertain its purpose and policy in reference to the particular facts of this case, as we have just conceded them to be. Its first provision is, " no sum of money due, or to become due, to any pensioner, shall be liable * * * under any legal or equitable process whatever." The exemption here declared is absolute and unqualified. The next provision is, "whether the same remains with the pension-office * * * or in course of transmission to the pensioner." This is not necessarily a qualification of the absolute exemption declared in the preceding provision. If it had been so intended the word " while" would have been used instead of "whether." The latter is not a word of limitation, but the former is necessarily such. If the language were, " no sum of money shall be liable, *while* it remains in the pension-office, &c," there could be no question that the exemption was intended to be confined to the time and places specified, that is, during the time it is in the hands of the pension-officers or in course of transmission to the pensioner. But the word "whether" gives the specifying provision a very different import. It entirely excludes the implication, that the enumeration of particular times and places of exemption was intended to exclude all others. This is made more manifest by the concluding provision, " but

shall inure wholly to the benefit of such pensioner." If the preceding provisions are construed to limit the exemption to the places enumerated, then this provision is wholly useless and ineffectual for any purpose. Moreover, if the statute had no other purpose than to exempt the pension-money while in the hands of the officers and agents of the government or in transmission from them to the pensioner, no such statute was needed; because, by the general law the money was protected from legal process or interference by creditors in any manner while in the custody of the government or any of its officers or agents appointed for its distribution, or while it is in course of transmission from them to the pensioner or person entitled to receive it. *Buchanan* v. *Alexander*, 4 How. 20 ; *Elwin's Appeal*, 67 Pa. St. 367.

It seems to me, therefore, that the exemption was not intended to be rigidly confined to the times and places enumerated in the statute. It provides not only that the money shall not be seized by legal process before it is received by the pensioner, but it likewise expressly declares that it "shall inure wholly to the benefit of the pensioner."

The next enquiry is, how shall it inure to the benefit of the pensioner? I do not think this statute was intended to exempt pension-money, after it has been received by the pensioner, entirely from liability for his debts. In other words, I do not think it was intended to add to the exemption laws of the States by exempting the proceeds of pensions from liability for the debts of the pensioner even if Congress had the right to create such an exemption, which I very much doubt. But as pensions are mere bounties, which the government has the right to grant or withhold, as its will or policy may dictate, it has the undoubted right to grant them in such manner and upon such conditions, not inconsistent with the laws and policy of the States in which the pensioners reside, as Congress in its judgment and discretion may deem proper to impose. It may give the pensioner the absolute right to dispose of the bounty by gift or otherwise to whom he chooses and without regard to any debts he may owe or the claims of his creditors. The money being a bounty and not a debt due to the pensioner, his creditors have no legal rights in regard to it. He can dispose of

it either with or without consideration, and such disposition can not be regarded as a fraud upon his creditors or any violation of their rights, because they have no legal right or claim to it, at least, until they have acquired such legal right or claim by some process of the State law, to subject it to the satisfaction of their debts, not in contravention of the act of Congress granting the bounty. If such process is not resorted to and such right acquired before the pensioner has disposed of the pension or its proceeds, the right to do so is lost, and the person to whom the same has passed acquires a valid title thereto, unaffected by the claims of the creditors of the pensioner. The money is no longer subject to the debts of the pensioner, because it has rightfully passed from his hands by the power given to him over it by the government, his benefactor. Nor is it liable in the hands of the person to whom it has been passed or transferred, because such person has acquired a valid title to it exempt from any legal rights of the creditors of the pensioner. The money is of course liable to be subjected to the payment of the debts of the donee or transferree, but it is not also liable for the debts of the donor or transferror. If, therefore, the creditors of the donee or transferree, do not complain those of the donor or transferror can not do so, and the donee may do with it as he pleases. He may give it to the wife of the donor or convey to her its equivalent in land. If he does the latter, the land will be the separate property of the wife, liable as her other property for her debts, but it will not be liable for the debts of her husband. It will be her separate property with the same exemptions, incidents and liabilities of any other separate estate she may have and no other. *Hayward* v. *Clark*, 50 Vt. 613; *Child* v. *Pearl*, 43 Vt. 224.

This conclusion is supported by many other provisions of the pension-law by which the benefits of pensions are carefully guarded for the use of the pensioner and his family, but I deem it unnecessary here to do more than to cite some of said provisions. See, secs. 4745, 4766, 4785, 4786, and 4703 U. S. Rev. Sts.

In the case at bar, the appellee, D. D. Johnson, having obtained the pension-drafts and either transferred them, or the proceeds derived from them, to Abraham Johnson who in

consideration thereof by written contract agreed to convey to the appellee M. M. Johnson, the wife of said D. D. Johnson, the land sought to be subjected to the plaintiff's judgments in this suit, according to the views hereinbefore expressed, the said land is not liable for the payment of the plaintiffs' debts, and therefore the decree of the circuit court must be affirmed.

AFFIRMED.