The judgment is reversed, verdict set aside, new trial awarded, and cause remanded for such trial.

Rᴇᴠᴇʀsᴇᴅ.    Rᴇᴍᴀɴᴅᴇᴅ.

## CHARLESTON.

### MᴄFᴀʀʟᴀɴᴅ v. Fɪsʜ.

*(Hᴏʟᴛ, Jᴜᴅɢᴇ, absent.)

Submitted June 17, 1890.—Decided December 16, 1890.

Jᴜᴅɢᴍᴇɴᴛ—Lᴇɪɴ.

Where F. purchased a tract of land of S. and executed a deed of trust thereon to secure the purchase-money and subsequently paid S. a part of the purchase-money in cash, and gave his notes for the balance, S. agreeing to release a portion of the land and look to the remainder only as security for the payment of the notes, and S. afterwards sold the notes to McF. who held them at maturity, when F. voluntarily confessed judgments thereon, said judgment is a lien on the entire tract of land originally purchased by F.

*N. C. Prickett,* and *J. H. Riley* of counsel for appellant, cited : 4747 U. S. Rev. Stat.; 27 Kan. 319; 57 Ia. 712 ; 12 All. 529 ; 44 N. J. L. 376 ; 7 S. W. Rep. 557 ; 14 Atl. Rep. 649 ; 31 Ohio St. 649 ; 22 W. Va. 430 ; 1 W. Va. 125 ; Freem. Judg'ts § 215; 17 Ill. 572; 5 McL. 172; 1 Cow. 321; 7 Port. 669 ; 56 Ala. 706.

*J. J. Jacob* of counsel for appellant, cited : 2 Chitt. Cont. 1477 ; 20 W. Va. 422; 24 W. Va. 766 ; Stark. Ev. (10th Am. Ed.) 531, n. 1 ; 27 W. Va. 644 :

*C. L. Brown* for appellee, cited 27 W. Va. 644.

Eɴɢʟɪsʜ, Jᴜᴅɢᴇ:

This was a suit in equity brought by R. H. McFarland against Benjamin F. Fish, J. B. Swann, in his own right and as administrator of R. Swann, deceased, and W. W. Riley, trustee, in the Circuit Court of Jackson county, to

*Case submitted before Judge Holt's appointment.

enforce a judgment-lien for seven hundred eighty six dollars, with interest and costs, and to subject to sale a tract of land situated in said county, and containing one hundred sixty six and a half acres, the property of the defendant Benjamin F. Fish, to the satisfaction of said judgment-lien.

The plaintiff alleges that on the 17th day of October, 1887, he recovered said judgment in the office of the clerk of the Circuit Court of said county against said Benjamin F. Fish, with interest from that date, and eight dollars and forty five cents costs, and had the same immediately docketed in the office of the clerk of the County Court of said county, as appears by a certified copy of said judgment therewith filed; that said Benjamin F. Fish is the owner in fee of said one hundred sixty six and a half acres, of land, situate in said county, which was conveyed to him by George M. Custard and wife, and a copy of said deed of conveyance is exhibited with said bill; that the claim on which said judgment was predicated was originally a large debt owed by said Benjamin F. Fish to one R. Swann, now deceased, and to secure which said Fish executed a deed of trust on said one hundred sixty six and a half acres of land to W. W. Riley, trustee, dated April 10, 1877, a copy of which trust-deed is exhibited with the plaintiff's bill; that said debt and deed of trust came into the hands of said John B. Swann as administrator of the estate of said R. Swann, deceased, and that said Benjamin F. Fish paid to said John B. Swann, as such administrator, all of said indebtedness, except the sum of six hundred dollars, whereupon said John B. Swann, as such administrator, released to said Benjamin F. Fish sixty six and a half acres of said tract of land from the lien of said trust-deed, a copy of which release is also filed as an exhibit with the plaintiff's bill; that afterwards, in the settlement and distribution of the estate of said R. Swann, the said indebtedness of six hundred dollars due from said Fish became the individual personal property of said John B. Swan in his own right, as heir at law of said R. Swann, it being a part of his distributive share of said estate, and that for value received the said John B. Swann assigned said

six hundred dollar Fish claim to the plaintiff; that said Benjamin F. Fish, not being able to pay said sum and its accrued interest to plaintiff, and desiring more indulgence and time in which to pay the same, confessed said judgment in the office of said clerk in favor of the plaintiff for the sum of seven hundred and eighty six dollars, with interest and costs, being said indebtedness of six hundred dollars with its accrued interest from date, and that said defendant confessed said judgment to secure plaintiff in said claim, whereupon plaintiff agreed not to issue execution or otherwise proceed on said judgment until March 1, 1888, which agreement plaintiff faithfully kept and observed ; that there are other liens, claims, or incumbrances on said land, and no part of plaintiff's judgment has been paid; that the same is a valid lien on said tract of one hundred sixty six and a half acres, and every part and parcel thereof, and that the rents, issues, and profits thereof will not pay said judgment in five years; and he prays that said judgment may be declared a lien on said land.

The defendant John B. Swann, as administrator of said R. Swann, deceased, and in his own right, filed an answer to the plaintiff's bill, in which he admitted the execution of said deed of trust and release, and exhibited copies thereof with his answer, and stated that the sum mentioned in said deed of trust as due R. Swann represented purchase-money of said tract of one hundred sixty six and a half acres of land in the bill mentioned; that in the year 1882 said Fish made a payment on said indebtedness, and adjusted the residue by executing to respondent his notes for six hundred dollars, balance due thereon, to secure which he (respondent) was to have and retain a lien on one hundred acres of said one hundred sixty six and a half acre tract, and that he, respondent, afterwards signed and transferred said notes to the plaintiff, R. H. McFarland, which assignment was to be without recourse upon respondent; that he does not know what disposition said McFarland and Fish have made of said indebtedness, but he is informed and believes the allegations of plaintiff's bill in regard thereto are true. He says that said six hundred dollars is a balance from said indebtedness mentioned

in said deed of trust, and when paid will be in full satisfaction thereof, and that the judgment in the plaintiff's bill mentioned is based on said six hundred dollars debt and the balance of said trust-deed; that he has assigned all of his interest therein to plaintiff, and has no longer any interest or claim therein, nor by reason of said trust-deed, nor the debt therein mentioned, and no interest in said suit, and he prays to be hence dismissed.

The defendant Fish demurred to plaintiff's bill, and for answer thereto said that it was true that John B. Swann, for the use of the plaintiff, recovered by confession a judgment against him in the clerk's office of said court on the 17th day of October, 1887, for seven hundred and eighty six dollars and costs. He also admitted that at the date of the institution of said suit he was possessed of the tract of one hundred sixty six and a half acres mentioned in the bill ; that said judgment remains wholly unpaid to plaintiff, and says he is advised that the lien of said judgment, by operation of law, attaches to the whole of said estate. He also admits the execution of said deed of trust to W. W. Riley, trustee, to secure R. Swann on said land, as alleged ; that at the date of said trust-deed he was indebted to said R. Swann, deceased, in the sum of one thousand dollars, to be paid in one, two, three, and four years from the date of said deed, with interest in equal installments, evidenced by respondent's four promissory notes of two hundred and fifty dollars each; that being unable to pay said notes, or any part thereof, in the spring of 1882, after all of said notes had become due, said John B. Swann, as administrator of said R. Swann, caused the said land to be advertised for sale by said W. W. Riley, trustee, in order to raise money to pay off said notes, and that a sale was made to one William Sayre, acting for and on behalf of said John Swann, as administrator of said R. Swann, deceased, for the sum, and at the bid of one thousand and twenty five dollars, but this sale was never completed by a legal conveyance from said trustee to said John Swann, yet respondents regard said Swann, as the legal owner of said land, and believed he had acquired title thereto by virtue of said sale ; that some time after said sale said Swann sold said land to

respondent at the price of one thousand four hundred dollars for the entire tract of one hundred sixty six and a half acres, and a contract in writing between said Swann and respondent was entered into evidencing this transaction, in which it was provided and agreed that, upon the payment of the sum of eight hundred dollars by respondent to said Swann, he, the said Swann, was to release to respondent the said trust-deed as to sixty six and a half acres of said land, and said sixty six and a half acres was to become the absolute property of respondent, free from said purchase-money debt and trust-deed, which still remained on the records of said county in full force and virtue, no legal conveyance having been made from said trustee to said Swann; that he accordingly paid said eight hundred dollars to said Swann, and was entitled to said release as to said sixty six and a half acres, but did not demand the same until about May, 1887, when he learned that said contract, which had been left in the hands of Warren Miller, had been mislaid or accidentally lost; then on the 17th day of May, 1887, the said John Swann, in conformity with his said agreement, did execute a release as to the sixty six and a half acres, a copy of which is filed with the bill.

Respondent also says that he was a soldier in the late war of the Rebellion, in the service of the United States, and that the said eight hundred dollars which he paid to said Swann was money paid him by the United States as a pensioner under the pension laws of the United States; that the same and the proceeds thereof are exempt from any legal process whatever; that of this fact respondent apprised said Swann, and before respondent entered into said contract it was agreed and understood between him and said Swann that said sixty six and a half acres was to be released so that it would secure to respondent the equivalent of his pension; that prior to the date of said release said plaintiff, who is the brother-in-law of said Swann, came to said respondent, looked at said land, and inquired of respondent as to the six hundred dollars balance due Swann, and respondent avers that he told plaintiff that he must look for the payment of said claim if he should buy it of Swann to the one hundred acres, and not to the one hundred

sixty six and a half acres, as the sixty six and a half acres was by agreement to be unaffected by said trust-lien and notes.

Respondent further says that plaintiff knew that the object of said release was to secure to respondent the avail of his said eight hundred dollars pension money, and he purchased said claim with the understanding and agreement between him and said Swann that said release was to be made, and that he would look only to the one hundred acres residue for security of said claim; that after said sale he executed new notes to said Swann for said six hundred dollars balance, and that said McFarland bought these notes, and they represent the consideration of the said judgment mentioned in the bill; that he never lifted the four promissory notes secured by said trust-deed, but that the same are outstanding still so far as he knows; that the notes on which said judgment was founded were not secured by said trust-deed, and did not represent the same debt as respondent understood it; that he believed that by the sale under the trust-deed to said Swann the old debt was wiped out, and that said Swann became the owner of said land; he therefore bought of said Swann under a new contract, paying him eight hundred dollars for lhe sixty six and a half acres, and six hundred dollars for the residue of one hundred acres, which six hundred dollars was secured to Swann by respondent's three notes of two hundred dollars each; that he is ignorant of law, and unacquainted with the requirements of legal conveyances, but that the tone, intent, and meaning of said contract with said Swann was to obtain for respondent an absolute conveyance of said sixty six and a half acres of land or its equivalent free from all incumbrances whatever or liability as to said notes and debt; that it was the understanding of said Swann, McFarland, and respondent that said six hundred dollars was in no way to affect said sixty six and a half acres, but that McFarland was to look only to the one hundred acres for his security for said notes, and that he agreed to do so, and that said McFarland would have foreclosed said trust-deed on the one hundred acres had he not discovered that the old debt had been extinguished by sale to Swann, and that

the notes held by him were not secured by said trust-deed; that he confessed said judgment in the belief that the sixty six and a half acres would not be affected thereby, and respondent avers that, relying on the agreement between him and said Swann and McFarland that said debt should not in any way or by any proceeding affect the said sixty six and a half acres, he confessed said judgment, and under no other considerations would he have consented to said judgment; that said McFarland agreed to look solely to said one hundred acres for his money; that he had notice of the contract between respondent and Swann, and took said notes with notice that respondent's pension money was invested in said sixty six and a half acres, and agreed not to affect the same in the collection of said notes; that said sixty six and a half acres is, by virtue of the laws of the United States, exempt from the lien of said judgment, being paid for with pension money.

Respondent further says, as the matter now stands, there exists not only the said judgment, but the debt secured by said trust-deed of one thousand dollars, so far as the records disclose, and that the four notes secured by said trust-deed are still outstanding, so far as respondent knows; that the legal title still is in said W. W. Riley, trustee, and that the trust debt has priority over the lien of said judgment; that respondent is entitled either to the possession of the original notes, the release of said trust-deed, a deed from said Swann, or to have the collection of said judgment enjoined perpetually; that both said judgment and trust-deed represent purchase-money for said land, and under different transactions, and due to different owners; that the whole thing grew out of one transaction, the intent of which was to secure to plaintiff, free from any claim, demand, or lien whatsoever, said sixty six and one half acres, and said one hundred acres subject to a lien for six hundred dollars; that the effect of such judgment-lien is to work a fraud upon respondent by taking advantage of the law in violation of an express agreement and an understanding between respondent and said Swann and McFarland; that it would be inequitable and unjust for the plaintiff to take advantage of respondent by enforcing a judgment-lien in

violation of his agreement as to said sixty six and a half acres; that said one hundred acres is worth a great deal more than the amount of said judgment, and that it is not true that said one hundred sixty six and a half acres would not yield rent sufficient in five years to pay off said judgment and costs; that it would be inequitable and wrong and illegal to enforce said pretended judgment-lien on said sixty six and a half acres under the circumstances stated; that said sixty six and a half acres is now the property of respondent's wife, having been conveyed to her by respondent.

He therefore prays that said Swann may be required to file in this cause a deed to him from said W. W. Riley, trustee, for said one hundred sixty six and a half acres of land, and a deed from himself to respondent, or otherwise to surrender up to respondent said original four notes mentioned in said trust-deed, and a complete release of said trust-deed or otherwise respondent prays that said judgment be perpetually enjoined, as having been founded on a consideration which has totally failed, or that said trust-deed and proceedings thereunder be enjoined to the end that respondent may be protected from possible and multiplied litigation and trouble; that the said judgment-lien, if enforced at all, be enforced only as to said one hundred acres, according to agreement, and that general relief be granted respondent.

This answer was excepted to by the plaintiff McFarland, as insufficient in law, and as setting up no valid defence, and that the sixty six and a half acres is not exempt from sale, even if it be true that it was paid for by respondent's pension money, and that said sixty six and a half acres is liable to be sold to satisfy plaintiff's judgment.

On the 2d day of August, 1888, the cause was referred to a commissioner to take and report an account showing (1) the amount due plaintiff on the demand set out in the bill; (2) what real estate the defendant Fish is possessed of, together with the nature of his title thereto, the value thereof, and the annual rental value of the same; (3) what liens or other incumbrances affect said real estate, and the kind, amounts, and priorities of said liens. In response to these requirements, a commissioner of said court reported the amount of said claim, with interest added, to the 6th

day of November, 1888, to be eight hundred forty four dollars and forty eight cents, and that the defendant Fish was possessed of the following real estate, situate on Cedar run, in said county of Jackson: A tract of one hundred sixty six and a half acres, on which a deed of trust was given on the 10th day of April, 1877, to W. W. Riley, as trustee, to secure the payment of the notes given for said tract of land; that afterwards, to wit, on the 17th day of May, 1887, a release was made by the defendant, John B. Swann, in his own right and as administrator of R. Swann, deceased, of the trust-lien on sixty six and a half acres of said land, leaving one hundred acres subject to the trust-lien; and on the 17th day of October, 1887, said John B. Swann, for the use of the plaintiff, procured a judgment against the defendant B. F. Fish, which became a lien upon all of the said tract of one hundred sixty six and a half acres of land. The legal title to one hundred acres is in defendant W. W. Riley, as trustee, but the judgment covers all the land, and that there was no evidence before him as to the value of said land, or its rental value. That the first lien upon the one hundred acres of said land is the trust debt, but the judgment-lien is for the same debt, and covers the whole of the tract of one hundred and sixty six and a half acres of land in the bill mentioned, the same on the 6th day of November, 1888, amounted to the sum of eight hundred and forty four dollars and forty eight cents.

On the 9th day of August, 1889, the cause was heard upon the former proceedings had therein, and upon the depositions taken by the plaintiff and by the defendant Fish, in consideration whereof the court held that the plaintiff was not entitled to the relief prayed for in his bill as to the parcel of sixty six and a half acres of land described in the bill, and so far as it seeks to enforce the demand asserted in said bill against said sixty six and a half acres, and that said sixty six and a half acres of land, as described in the bill and exhibits and in said Fish's answer, is not, nor is any part thereof, liable to the judgment of John B. Swann, Use of R. H. McFarland, against said Benjamin F. Fish, for seven hundred and eighty six dollars with interest

and costs, described in the bill, and decreed that the plaintiff's bill be dismissed as to the defendant Fish, so far as the said bill seeks to enforce said judgment, or the collection thereof against said sixty six and a half acres of land, or against any part thereof, and from this decree the plaintiff obtained this appeal.

The defendant Fish seeks to avoid all liability for the payment of his three notes of two hundred dollars each, by reason of the alleged fact that the said Swann agreed to release the trust-lien which he held on said one hundred sixty six and a half acres of land so far as it constituted a lien on sixty six and a half acres thereof, and for the further reason that said Swann agreed to look to the remaining one hundred acres for the payment of said six hundred dollars and its interest. Now, if this agreement was such as to constitute a good defence in this suit, and to prevent the plaintiff, McFarland, from subjecting any portion of said sixty six and a half acres of land to sale for said three notes of two hundred dollars each, the burden of proof is certainly on said Fish, and he must show by a preponderance of the evidence that such was the fact; and while it is true that said Fish in his deposition swears that such was the agreement, and that the plaintiff, McFarland, had notice of it, yet, when we look at the deposition of John B. Swann, he says, in an answer to a question : "I did re-sell to Mr. Fish at the price of one thousand four hundred dollars. When I sold to Mr. Fish, he had drawn a pension of eight hundred dollars, and he said before he invested this eight hundred dollars in the land he wanted to secure the sixty six and a half acre parcel thereof free from liability on account of the residue of the purchase-money, amounting to six hundred dollars, and secured by a deed of trust, and I agreed to this, and was to release the deed of trust as to the sixty six and a half acres, and to look to the one hundred acres for the balance of the purchase-money." This agreement was in writing, but has since been lost; and he further says that the plaintiff, McFarland, had notice of this agreement, and took said notes subject to said understanding.

Now what is the fair interpretation of this agreement as stated by said Swann ? Merely that said sixty six and a half

acres was to be released from said trust-lien, and that on enforcing said lien for the purchase-money he would do so only against the one hundred acres part thereof. This agreement was subsequently carried into effect by a formal release of sixty six and a half acres, part of said one hundred sixty six and a half acres, being executed by said Swann. When this was done, the agreement between the said Swann and Fish was fully executed, and he then held said land free from any liability by reason of said unpaid purchase money, not only so far as said trust-deed was concerned, but free from any lien of any character. Previous to that time, he only had the equity of redemption, but this release vested him with the unincumbered fee-simple title. It is true he still owed the six hundred dollars purchase-money, but there was no lien of any character reserved to secure it. The sale made by Riley, trustee, had been ignored and never carried into effect, and the legal title still remained in said trustee until said trust-deed was released as to said sixty six and a half acres. If then, it was true that the plaintiff, McFarland, was acquainted with this agreement and understanding between said Swann and Fish, this would be the condition of the title to said one hundred sixty six and a half acres of land at the time the notes he held as assignee of Swann matured and were placed in the hands of his attorney, Prickett, for collection. And when we look to the deposition of said McFarland, we find he says he purchased these notes from said Swann about the 20th of March, 1887, and the release was not executed until May 17th, 1887. He also says that it was suggested to him by the defendant Fish that said Swann had agreed to release to him a part of said land from the lien of said trust-deed, and also in connection with the same was to give him an outlet to to the public road from said land, but that said Fish did not at that time, or at any other time, explain to him the particulars or extent of said release. He never complained that the notes were not just; admitted that they were wholly unpaid, and claimed that he expected to pay them off; and claimed that if he had the outlet promised by said Swann he could have sold said land and paid off said debt. He also states that he inquired of said Swann about said re-

lease, and he replied there was nothing in the way of collecting said notes, and when he pressed him about the matter he informed him emphatically and repeated that the whole of said one hundred sixty six and a half acres was liable to the payment of said three notes, and that he had no understanding whatever with either said Fish or Swann aboat releasing any part of it from liability to said deed of trust or said notes; that he had no further information about such release until he read said Fish's answer in this cause, and that said release was executed and recorded after he purchased said notes and had left the county of Jackson; that he did look at the land before he purchased said notes; it was then that said Fish suggested the release, but did not tell him what part of the land was to be released.

And when we refer to the deposition of N. C. Prickett, the attorney who was employed by McFarland to collect these notes, we find that when he had an interview with said Fish, and informed him that he had the notes for collection, said Fish told him he would like to have some time on them, and thought if he could get time he could sell his farm of one hundred sixty six and a half acres, or part of it, and pay said notes, which were just and ought to be paid; that he agreed with him, that if he would confess judgment on said notes, he would give him a stay of execution or other proceedings for six months; that he confessed judgment, and he gave him the time agreed upon, and he never claimed, until after the chancery suit was brought, that any part of said land was exempt from any legal process or lien of a judgment on said notes. It occurs to me that, if there really was an agreement and understanding between said Fish and Swann that said sixty six and a half acres was under no circumstances to be liable to the payment of said six hundred dollars and its interest, said Fish would have certainly mentioned the fact when said attorney Prickett was pressing him for the payment of said notes, and asking him to confess a judgment for them, and the fact, that he was silent in regard to the matter under these circumstances coupled with the positive evidence of the plaintiff McFarland, that he had no notice of

such claim until he read the answer of Fish filed in said suit, has a strong tendency to create a doubt as to the existence of any such agreement.

In the case of *Duncklee* v. *Mill Co.*, 3 Fost. (N. H.) 245, the court held : "In the absence of fraud between the assignor and assignee, the assignment of a chose in action will be good against all defences that did not in equity exist at the time of the assignment, and the equitable interest of the assignee will be protected in courts of law against all interference by the original parties ;" and in the case of *Parker* v. *Kelly*, 10 Smedes & M. 184, we find the court held that "a release by an assignor of his assignee's claim is a nullity."

But, if it be conceded that the release executed by Swann of said sixty six and a half acres of land was all regular and in accordance with the written agreement which is said to have been in the hands of Warren Miller and has been lost, the contents of which, however, the said Miller was not called on to prove, in what attitude does it place the defendant Fish and his lands when he is called on by Prickett, the attorney of plaintiff, for the payment of said notes ? And could he have asked more from said Swann in reference thereto under his alleged agreement than he then had ? His title to the sixty six and a half acres of land had been changed from an equity of redemption by said release into a fee-simple, which, so far as appears from the record, was unaffected by any lien of any character; and he voluntarily, for the consideration of gaining time to make sale of his lands, goes into the office of the clerk and confesses a judgment for the full amount of said notes and their interest ; and as to the effect of such confession we may refer to the case of *Syme* v. *Johnston*, 3 Call, 558, in which it was held that "a confession of judgment by a purchaser in an action on the case for the purchase-money (in which the question of fraud in the contract might have been tried) and his declaring himself satisfied with the title at that time when he must be presumed to have been acquainted with his equity, amounts to a confirmation of the contract, and ought to bind him;" also to the case of *Mason* v. *Williams*, 3 Munf. 126, where it is held : "A confession of judgment

and release of equity will be supported, though made by a man of weak understanding, in the habit of making improvident bargains, addicted to intoxication, and embarrassed in his circumstances ; and though such confession was induced by the plaintiff's giving him time to pay the money, if no other influence was exerted, and no fraud committed, in obtaining such confession, the same being deliberately and voluntarily made by the defendant, or by virtue of a power of attorney deliberately and voluntarily executed by him."

The defendant also seeks to prevent said sixty six and a half acres of land from being subjected to the satisfaction of said judgment on the ground that said sixty six and a half acres was purchased by him with money paid him by the United States as pension money. The language of the United States statute relied upon reads as follows : "No sum of money due or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or in the course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of the pensioner."

In construing this section, we find that the Supreme Court of Kansas (volume 27, p. 319) in the case of *Cranz* v. *White,* says : "Section 4747, Rev. St. U. S., protects pension money only as it is due or to become due, and while in transit to the pensioner, and does not exempt money in the hands of the pensioner, although the proceeds of a pension."

So, also, in the case of *Webb* v. *Holt,* 57 Iowa, 712 (11 N. W. Rep. 658) it was held : "Where a pensioner received the pension due him under the acts of congress on account of physical disability received while serving as a soldier in the late war in the form of a draft, drew the money on the draft, and deposited the same in a bank to his credit, it was not exempt in the hands of the bank from the process of attachment for the pensioner's debts." See, also, *Kellogg* v. *Waite,* 12 Allen, 529. Also *Jardain* v. *Association,* 44 N. J. Law, 376, where the same is held in substance.

In our own state, in the case of *Hissen* v. *Johnson*, 27 W. Va. 644, which seems to be relied on by the appellee in this case, SNYDER, J., in delivering the opinion of the court, says: "I do not think this statute was intended to exempt pension-money, after it has been received by the pensioner, entirely from liability for his debts. In other words, I do not think it was intended to add to the exemption laws of the state by exempting the proceeds of pensions from liability for the debts of the pensioner, even if congress had the right to create such an exemption, which I very much doubt."

The case under consideration is clearly distinguishable from the case of *Hissen* v. *Johnson, supra.* In this case the defendant Fish says he paid the eight hundred dollars in cash. It was not paid in government checks, as the evidence showed the payments were made in *Hissen* v. *Johnson.* In this case it does not appear how long the defendant Fish had been in possession of said money, where it had been kept, or what use he had made of it by loan or otherwise since he had it. It was, however, in the shape of cash when paid. It in no manner could be considered *in transitu*, but was and had been in the hands of the defendant Fish; and I can not consider that land purchased with it should in any manner be exempt from the lien of a judgment voluntarily confessed by said defendant. Neither do I consider said sixty six and a half acres of land relieved from the lien and effects of said judgment by reason of said alleged agreement with Swann, for the reason that at the time said judgment was confessed said Swann had complied with his agreement, and no lien of any character existed against it, and this lien was created by his own deliberate voluntary act.

For these reasons the decree complained of must be reversed, and the cause remanded to the Circuit Court of Jackson county for further proceedings to be had therein, and the appellee must pay the costs of this appeal.

REVERSED.    REMANDED.