# CHARLESTON.

BANK OF KINGWOOD *v.* MURDOCK *et al.*

Decided November 24, 1900.

PENSION MONEY—*Exempted, When.*

> Section 4747, Rev. St. U. S., protects pension money only as it is due or to become due, and while in transit to the pensioner, and does not exempt money or property in the hands of the pensioner, although the proceeds of a pension.  (p. 306).

Appeal from Circuit Court, Preston County:

Bill by the Bank of Kingwood against James E. Murdock and others.  Decree for defendants, and plaintiff appeals.

*Reversed.*

WM. G. BROWN, JR., for appellant.

JAMES A. BROWN, for appellees.

McWHORTER, PRESIDENT:

The Bank of Kingwood filed its bill in the circuit court of Preston County against James E. Murdock and others, creditors of said Murdock, setting up a judgment rendered March 30, 1898, for five hundred and sixty dollars, with interest and costs, against said Murdock, alleging that it was a lien on certain real estate of said Murdock in the town of Kingwood, and praying for decree of reference of the cause to a commissioner to ascertain the real estate of said Murdock, the liens thereon, their character, amounts and priorities, and to whom owing, and for a decree of sale of said real estate to satisfy the said liens and for general relief.  Defendant Murdock filed his answer to said bill, admitting the judgment of plaintiff, and his ownership of the real estate, but denied that he had no personality out of which the money could have been made, but on the contrary had ample personal property to pay said judgment, consisting of store goods in his storehouse, which said store goods, show cases and other personalty was worth at least six hundred and sixty dollars, far more than sufficient, if properly handled to sell for enough to pay said judgment, but that the plaintiff issued an

execution and placed the same in the hands of the sheriff who levied on the personalty in the store, and took it into possession and then it was wasted and sacrificed, and thus wasted and lost to respondent, and that because thereof he is entitled to have the full value of such personal property credited on the execution issued on said judgment, and further that all the real estate owned by him was purchased and paid for by him with money given to him by the government of the United States as pension, and therefore the same is not liable for the judgment which is not a lien on said real estate, being protected under section 4747 U. S. R. S., and asked to be credited on said judgment with the value of the personal property levied on and wasted by the sheriff, and that said bill be dismissed. Plaintiff replied generally to so much of said answer as was responsive to the bill, and filed special replication denying the allegations of the answer in relation to the wasting of the personal property, and denying that the real estate is so protected against its judgment. Depositions were taken and filed for the plaintiff and for the defendant, and on the 21st day of December, 1899, the cause was heard on the bill, exhibits, answer of defendant Murdock, and special replication and depositions, "on consideration whereof it is the opinion of the court that on the pleadings and proofs that this cause is for the defendant, James E. Murdock, and the plaintiff's bill is accordingly dismissed with costs to the defendant James E. Murdock," and after the court had rendered its opinion in the cause and directed a decree, the defendants W. G. Brown and Margaret P. Brown tendered their answers and asked leave to file the same, to which defendant James E. Murdock objected, but the objection was overruled and the answers filed. Plaintiff appealed from said decree.

There are two questions raised by the pleadings in the cause. 1st. Was the real estate owned by the defendant, James E. Murdock, liable for the judgment of plaintiff, or was it protected by sec. 4747 Revised Statutes of the United States? And second, the question raised by the allegations of the answer of defendant James E. Murdock relative to the conduct of the sheriff in handling and wasting the goods levied on by him under the execution sued out by plaintiff on its judgment. The court does not seem to have passed upon the last mentioned question at all, as it fails to ascertain the value of the goods and what amount should be credited on the judgment on account thereof, if any-

thing more than was credited as the proceeds of the sale of said goods, and does not find that the conduct of the sheriff in levying and disposing of the goods and applying the proceeds was not reasonably careful and proper, except by inference from the language of the decree that "it is the opinion of the court that on the pleadings and proofs this cause is for the defendant James E. Murdock." This leaves the matter in a chaotic state as to the issue touching the personal property if it was the purpose to find for the defendant on that branch of the case, as it would be finding the issue for him and providing no relief. The only conclusion I can come to is that the court wholly ignored the issue made by the answer and replication as to the personal property. The real question in the case is as to the liability of the real estate of defendant James E. Murdock purchased with his pension money to be subjected to the payment of plaintiff's judgment, or whether the proceeds of such pension money invested by him in real estate after it has come to the hands and under the full control of the pensioner is protected by the provisions of sec. 4747 R. S. U. S. against the creditors of said pensioner. Said section is as follows: "No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizin by or under any legal or equitable process whatever, whether the same remains with the pension office or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of the pensioner." The defendant James E. Murdock on the 25th day of August, 1885, deposited in the National Bank of Kingwood to the credit of his account a government check for pension of two thousand and eighty-five dollars and fifty-five cents. Shortly afterwards he purchased the real estate sought in this case to be sold to pay plaintiff's judgment, and paid for the same from said fund checked out by him partly directly for that purpose, and partly to pay for railroad bonds which were purchased for the purpose of turning in on the purchase money of said land. Several cases have been decided by the courts of last resort involving various phases of this question, and the decisions are somewhat conflicting, and but for the last clause in the section, "but shall inure wholly to the benefit of the pensioner," there would be no difficulty in arriving at the meaning of the section, and in the construction of it, there would be no conflict whatever. The case of *Hissem* v. *Johnson,* 27 W. Va.

644, is confidently relied on by appellee, in which it is held, "where a pensioner received pension drafts under the act of Congress and transfers said drafts or the proceeds thereof to a third person, who in consideration thereof conveys or agrees to convey to the wife of the pensioner a tract of land; and thereafter a suit is brought by judgment creditors of the pensioner, whose judgment existed at the time said pension drafts were received, held: under sec. 4747 U. S. Rev. Sts., said land is not liable for the payment of said judgments." It will be observed that the judgments attempted to be enforced in that case were "judgments which existed at the time said pension drafts were received." Admitting that the act of Congress intended by the said last clause to protect the money in the hands of the pensioner against his creditors, it could only have reference to the creditors and indebtedness existing at the period to the time of the receipt of the money by the pensioner; surely it was never intended that the government should assume guardianship over the pensioner to protect him against his own acts in dealing with his fellow man, nor to establish a general exemption law as applied to pension money and its proceeds, property wherein it is invested. If this were the purpose or intention provision would have been made for some kind of record that the public might be put upon notice. When an individual accumulates property and holds himself out to the public as the owner thereof, that property becomes a basis of credit to the owner, and if such property is to be exempt from all his debts and liabilities because it was purchased and paid for with the bounty of the government, and no record to enable the public to know whence he derived it, he would be in a position to impose upon the unwary and defraud his neighbor. The case of *Hissem* v. *Johnson* differs from this in that the pension checks were transferred and assigned to a third party, and JUDGE SNYDER in his opinion in that case distinguishes it from cases cited, holding that after the pensioner has actually received the money for his pension drafts the money is liable for his debts, he says, "It will be found that all of them without exception were cases in which at the time the process issued, the money was still in the hands or under the control of the pensioner and in none of them had he disposed of, by gift or otherwise, the money sought to be subjected to legal process by his creditors. In the case before us, the money had been disposed of and actually passed from the possession of the

pensioner long before this suit was instituted. It had passed into the hands of Abraham Johnson beyond the reach of any legal process whatever by the creditors of the pensioner. It is not attempted to be reached by this suit, but the only effort is to subject the land in the hands of a third party, the wife of the pensioner, upon the sole ground that the pension money so disposed of was the consideration paid for the land. It is therefore a very different case from any of those relied on by counsel for appellants." While JUDGE SNYDER expresses no opinion in regard to said other cases, he clearly and expressly shows wherein the case under his consideration was entirely different from the cases relied on by the appellants, so different that he thought there was no conflict in the opinions. The case at bar is directly in line with the other cases referred to by JUDGE SNYDER. The proceeds of the pension checks were still in the hands of the pensioner Murdock, as in what I consider the leading case among those referred to, *Cranz* v. *White,* 27 Kan. 319, in which the opinion of the court is written by Judge Brown, now associate justice on the Supreme Court of the United States, wherein it is held, "Section 4747 U. S. Revised Statutes protects pension money only as it is due or to become due and while in transit to the pensioner, and does not exempt money in the hands of a pensioner, although the proceeds of a pension," and "where a pensioner receives pension drafts and sells the same to a bank in the usual course of business, which bank buys the drafts and credits the general account of the pensioner with the amount thereof, and from time to time thereafter a large portion of such account is checked out; held, that the balance due on such general account is subject to garnishment." While the bank account is referred to in the opinion as a general account which might imply that deposit of other funds might have been mixed with the pension money, yet it was clearly shown by the answer of the bank that, "Mr. White had checked out all of the said sum but four hundred and fifty dollars; which sum is now due him from us, being the balance of the proceeds of said checks * * * * the checks or drafts we obtained from him were pension drafts and were given to him, as we understood, in payment of a pension obtained by him from the government. The amount yet due him from us is a part of that which he obtained upon those pension checks or drafts, whatever they are called." The lower court sustained the exemption set up by the pensioner and

appellee under said section 4747, which holding was reversed, and Justice Brewer in commenting on and construing said section said, "Its language is not 'no money in the hands of a pensioner' or 'no pension money,' but 'no sum of money due or to become due to any pensioner.' The protection is to an undelivered sum of money * * * *. The last clause of the section which reads, 'but shall inure wholly to the benefit of such pensioner,' is qualified by and must be read in the light of the preceding words of the section. It is comprehensive language, but it is only language strengthening and making more plain the intention of the preceding words. It applies to money due or to become due, and not to money paid and in possession. Nowhere in the section is there referred to pension money in the hands of the pensioner. It does not purport to exempt money in such hands from the operation of state laws, either those of taxation, or the ordinary statutes concerning exemptions and indebtedness. It is doubtless true that such statute is to be liberally construed and so construed that the pensioner shall acquire full possession of his pension, free from any interception directly or indirectly in the course of its transit." In *Webb* v. *Holt,* 57 Iowa, 712, the court held the same way in a case exactly similar. The pensioner had received his pension draft from the government and deposited it in a bank to his credit, when the court held that the proceeds were not exempt in the hands of the bank from the process of attachment for the pensioner's debts. It is true that two of the judges in this case of a court of five dissented from the opinion of the majority because of the last clause in the section, contending that if it can be seized for his debts even after it comes to the hands of the pensioner the benefit could not wholly inure to him. The opinion in the Iowa case is handed down in the same year, 1882, as that of the Kansas case, and a few months later, yet the court evidently had not that case before it, as it is in no wise referred to, as it surely would have been if the court had known of an opinion of so eminent a jurist as Justice Brewer sustaining this holding, especially as two members of the court were dissenting. So the majority of the court was in no wise influenced by the opinion in the Kansas case. The same may be said also of the case of *Jardain* v. *Building Association,* 15 Vroom. N. J. Law, 376 (44 N. J.), decided in 1882 also, where neither the Kansas nor the Iowa case is referred to, where it is held that "money due for pen-

sions, while it remains in the hands of the disbursing officer or agent for distribution, or while in the course of transmission. to the pensioner, is not liable to be seized by creditors under any legal process. After it had come to his hands it is so liable like any other funds of the debtor." These three cases all decided in the same year represent the opinions of three able state supreme courts deciding the identical same question, and wholly without reference to each other's action showing that they each acted without the influence of either of the others which in my estimation adds strength and value to the decisions. I find the authorities are almost wholly in accord with the decisions just cited, and I conclude that the court erred in dismissing plaintiff's bill.

The decree is reversed and the cause remanded to· be further proceeded in.

*Reversed.*