## W. Z. JOHNSON *v.* J. L. FLETCHER.

1. EXEMPTION.  *If increased, obligation of contracts impaired.*
   The legislature cannot increase the exemption as to existing debts, and the act of Feb. 12, 1875 (Acts 1875, p. 122), does not protect the additional property enumerated therein from liability to a judgment enrolled before its passage.

2. SAME.  *After-acquired property.*
   Nor does it change the result that the debtor acquired the property after the act was passed.

ERROR to the Circuit Court of Tallahatchie County.

Hon. SAM. POWEL, Judge.

In October, 1872, a judgment in favor of J. L. Fletcher against Ed. Dale was recovered and enrolled. Dale, in 1876, became the owner of two horses, one of which he traded to W. Z. Johnson; and, in the fall of 1876, execution under said judgment was levied on that horse. A claimant's issue was decided in favor of Fletcher, and Johnson brings up the case.

*W. S. Eskridge*, for the plaintiff in error.

1. Under the act of Feb. 12, 1875 (Acts 1875, p. 122), the two horses were exempt from the judgment; and, consequently, the sale of one to Johnson was valid. Code 1871, § 2143.

2. The statute is constitutional as to debts existing before its passage. Cooley's Const. Lim. 284, 287, 366, 382; *Garrett* v. *Cheshire*, 69 N. C. 396; *Russell* v. *Lowth*, 21 Minn. 389. The right to a particular remedy is not a vested right. *Gunn* v. *Barry*, 15 Wall. 610; *Morrison* v. *M'Daniel*, 30 Miss. 213; 38 Miss. 198. Nor is there constitutional objection to laws reasonably increasing the exemption. Cooley's Const. Lim. 285–288; Potter's Dwarris on Statutes, 473; *Bronson* v. *Kinzie*, 1 How. (U. S.) 315; *Hill* v. *Kessler*, 63 N. C. 437; *Von Hoffman* v. *Quincy*, 4 Wall. 553.

3. At all events, as to these horses, which were acquired subsequently to the passage of the act, the rule avoiding the exemption cannot apply.

*Bailey & Bailey*, for the defendant in error.

1. The statute, if construed as retroactive, is unconstitutional. *Lessley* v. *Phipps*, 49 Miss. 790, 795; *Von Hoffman* v. *Quincy*, 4 Wall. 550; *Planters' Bank* v. *Sharp*, 6 How. (U. S.) 327; *The Homestead Cases*, 22 Gratt. 266; *McCracken* v. *Hayward*, 2 How. (U. S.) 608.

2. The future acquisitions are equally under the protection of the Federal Constitution. *Sturges* v. *Crowninshield*, 4 Wheat. 122; 1 Kent Com. 419–421.

CHALMERS, J., delivered the opinion of the court.

At the date of the rendition of the judgment there was exempt from sale, under execution or attachment, one horse or mule. By the act of Feb. 12, 1875 (Acts 1875, p. 122), two mules or horses were declared exempt. There is nothing in the language of the act to indicate whether it was intended to be retrospective or prospective only in its operation. Conceding that it was intended to apply to debts previously contracted, and to judgments already rendered, is it constitutional?

It may now be considered as firmly settled here and elsewhere, that any law which materially increases the amount of property withdrawn from liability to the owner's debts impairs the obligation of existing contracts, and is therefore, as to them, unconstitutional. *Lessley* v. *Phipps*, 49 Miss. 790; *Gunn* v. *Barry*, 15 Wall. 610; *The Homestead Cases*, 22 Gratt. 266. Is an extension of the exemption from one horse to two a material increase in the amount exempted? To a man of wealth it seems inconsiderable; and yet, as to this species of property, it doubles the exemption. To a large class of our population, embracing those most injured as well as those most benefited by exemption laws, the difference between one horse and two is quite material. It is the small farmers and laborers who are most interested in the exemption of two horses rather than one. It is the small trader who will be most injured if the increase is applied to his existing claims. If our present homestead exemption of eighty acres of land should be increased to a hundred and sixty acres, the increase would undoubtedly be considered material. But to the homeless and landless, who comprise so

large a portion of our population, and all of whose wealth consists usually of household furniture and one or more head of cattle or horses, a law which doubles the exemption in this species of property is as important as one which doubles the number of acres to a landholder. These people trade and traffic among themselves, and are creditors as well as debtors. Such a creditor may as well complain of a law which, acting retrospectively, doubles the personal exemption, as the banker or wholesale merchant of one which doubles the homestead.

But is there any sound distinction between a material and an immaterial increase in the exemption as applicable to existent contracts? If so, how shall that distinction be defined? Our predecessors held, in *Stephenson* v. *Osborne*, 41 Miss. 119, that a law which increased the homestead exemption from one hundred and sixty acres of land, not exceeding $1,500 in value, to two hundred and forty acres, regardless of value, and which more than quadrupled the exempt personalty, was not unconstitutional as to existing debts; and yet they said that " an abuse of the legislative discretion in this respect would demand the interposition of the court. We do not undertake to intimate what would amount to such abuse. . . . We only mean to say that the power of the legislature over this subject is not unrestricted by the Constitution, and that cases may arise in which it might be the duty of the judiciary to arrest its exercise." This case was overruled by *Lessley* v. *Phipps, ubi supra.* The extract quoted, in view of the law under consideration in that case, affords a striking example of the difficulty in which we involve ourselves when we say that an immaterial increase of the exemption is constitutional, but that a material one is not. We prefer the plain and unmistakable rule laid down by the Supreme Court of Virginia in *The Homestead Cases*, 22 Gratt. 294. " There is, I conceive," says the judge delivering the opinion, " no well-defined middle ground between holding that none of the debtor's property can, by a subsequent law, be withdrawn from the reach of the creditor, or else admitting that the whole of his estate may be exempted from sale or execution. In my view, the true doctrine, sustained by the great weight of authority, is that such property as was subject to execution at the time the debt was contracted must

continue subject to execution until the debt is paid, so long as it remains in the hands of the debtor."

All the confusion and conflict which have arisen on this subject grew out of the difficulty of distinguishing, in all cases, between the right and the remedy. The one must not be impaired; the other may be modified. The word "remedy" pertains more properly to those modes of procedure and pleading which lead up to and end in the judgment. As the Supreme Court of Louisiana said: "Statutes pertaining to the remedy are merely such as relate to the course and form of proceedings, but do not affect the substance of a judgment when pronounced." *Morton* v. *Valentine*, 15 La. Ann. 150, 153. The means provided after judgment for making it effective are also parts of the remedy, and may be modified at pleasure; but the withdrawal of property from the operation of the judgment, the denial of all remedy for its enforcement, either as to the whole or a portion of the debtor's property, strikes directly at the right, and impairs the obligation of the contract. The issuance of execution and a sale under it are parts of the remedy. Suppose that these be preserved, but that the law provides that no property shall pass under them, or, in other words, that all property shall be exempt, such a law would be valid as to debts thereafter contracted, and invalid as to those already incurred. Must not the result be the same where a portion only of the property is withdrawn from liability to the judgment? It is difficult to see how a law which exonerates from liability can be said to relate to the remedy alone. The remedies are those modes of procedure by which the liability of property to satisfaction of the debt is enforced. An exemption, whether great or small, is an exoneration of property from all liability. It strikes at the right by denying a remedy.

But it is urged in the case at bar that the horse in controversy was not owned by the debtor when the contract was entered into, and could not, therefore, have been the basis of the credit extended. The judgment was rendered before its acquisition; and instantly upon that acquisition became a lien upon the horse, unless it was exempt. Are debts contracted alone upon the faith of the property which a man owns at the time? When

a man of good credit, but without visible property, enters into an obligation, does not the creditor look to the probability or possibility of his acquiring something in the future which, when acquired, will, under existing laws, be liable to the debt?

There is no exemption now of a cotton crop. During a certain season of the year there are no cotton crops in the State, and it is then that a farmer obtains credit. Can the legislature thereafter exempt all cotton crops as to debts contracted previously, and when there were none in existence? These questions are answered by Chief Justice Marshall in *Sturges* v. *Crowninshield*, 4 Wheat. 122, 198, who says: " But it is not true that the parties have in view only the property in possession when the contract is formed, or that its obligation does not extend to future acquisitions. Industry, talents and integrity constitute a fund which is as confidently trusted as property itself. Future acquisitions are, therefore, liable for contracts; and to release them from this liability impairs their obligation."

Our conclusion is that the act of Feb. 12, 1875, does not protect the additional property enumerated therein from liability to debts existing before its passage. If this decision practically forbids the passage of all retroactive exemption laws, it is believed to be a result sanctioned by principle and supported by authority.                    *Judgment affirmed.*