.FOSTER & HANNUM v. BYRNE.

Pensions: PROPERTY PURCHASED WITH: EXEMPTION: CHAPTER 23, LAWS OF 1884: CONSTITUTIONALITY: IMPAIRMENT OF CONTRACTS. This court has held that the statutes of the United States do not have the effect to exempt from seizure, on execution or attachment, money paid to a pensioner after the same has come into his hands. (See cases cited in opinion.) As a logical consequence of those decisions, it is*held in this case that a homestead purchased with such money is not exempt in this state from attachment for a debt contracted prior to the purchase of the homestead, and prior to the enactment of chapter 23, Laws of 1884, notwithstanding said act declares to the contrary; and that said act, so far as it declares to the contrary, is void, being in violation of article 1, section 10, of the constitution of the United States, which declares that " no state shall pass any law impairing the obligation of contracts;" the rule being that statutes which undertake, after contracts are entered into, to exempt property from seizure for their satisfaction, which, but for the exemption created, would have been liable .to seizure, are in conflict with that provision. [BECK and ROTHROCK, JJ., dissenting.]

*Appeal from Clinton District Court.*

FILED, DECEMBER 21, 1888.

PLAINTIFFS brought an action on an account for goods and merchandise sold to defendant. They sued out a writ of attachment, which was levied on certain real estate. Defendant moved to discharge the property

from the levy, on the ground that it was exempt from seizure. The court sustained that motion, and the present appeal is from that order.

*Pascal & Armentrout* and *P. B. Wolfe,* for appellant.

*Merrill & Lee,* for appellee.

REED, J.—The debt for the recovery of which the suit was brought was contracted prior to March 1, 1884. The attached property was purchased by defendant on the thirty-first of January, 1887, and paid for out of money received by him from the government of the United States as a pension; a pension certificate having been issued to him on the nineteenth of October, 1886. He intended when he purchased the property to occupy it as a homestead, and, shortly after the attachment was levied, he entered into it with his family, and has since continued to occupy it as a place of residence.

This court has frequently held that the federal statute (section 4747, Rev. St. U. S.) does not have the effect to exempt from seizure, on execution or attachment, money paid to a pensioner after the same has come into his hands. *Webb v. Holt,* 57 Iowa, 712; *Triplett v. Graham,* 58 Iowa, 135; *Baugh v. Barrett,* 69 Iowa, 495. A majority of the court are content to adhere to that holding. It appears to us that the language of the act (which is set out in the opinion in *Webb v. Holt, supra*) precludes the idea that it was the intention of congress to exempt either the money, after it had gone into the hands of the pensioner, or the property which he may have purchased with it. The question, then, is whether the property is exempt under the provisions of any statute of the state. Before the enactment of chapter 23 of the Acts of the Twentieth General Assembly, there was no statute of this state exempting money paid by the federal government to pensioners, or the property purchased therewith. That statute, by its terms, exempts all money, received by any person resident of the state as a pensioner, whether the same

be in the actual possession of the pensioner, or loaned, invested, or deposited by him. It also exempts the homestead of such pensioner purchased and paid for with pension money. The act took effect March 28, 1884, after the debt in question was contracted. But, by the express language of the act, the exemption created by it "shall apply to the debts of such pensioners contracted prior to the purchase of such homestead."

The point urged by the appellant is that the act, in so far as it undertakes to exempt property acquired after a debt is contracted from seizure for the satisfaction of the debt, is in conflict with section 10, article 1, Const. U. S., which declares that "no state shall pass any law impairing the obligations of contracts." The supreme court of the United States has frequently held that statutes which undertake, after contracts are entered into, to exempt property from seizure for their satisfaction, which, but for the exemption created, would have been liable to seizure, were in conflict with that provision. *Edwards v. Kearzey*, 96 U. S. 595; *Walker v. Whitehead*, 16 Wall. 314; *Gunn v. Barry*, 15 Wall. 610. The holding in these cases is quite conclusive of the question before us. The provision of the statute in question cannot be sustained, and the order appealed from must be

REVERSED.

BECK, J., (*dissenting*.) I. Chapter 23, Acts Twentieth General Assembly, which took effect March 25, 1884, provides that the homestead of a pensioner, purchased with the proceeds of his pension, shall be exempt from seizure and sale for his debts, contracted either before or after the purchase of such homestead. Defendant relies upon this statute to support his claim that the property is exempt. It is insisted by counsel of plaintiffs that the statute, so far as it applies to debts contracted before the purchase of the homestead, is in conflict with the constitution of the United States, in that it impairs the obligation of contracts. I need not consider the question thus raised, further than to

inquire whether the pension is exempt by the statute of the United States from all debts of the pensioner. If it is, no creditor of the pensioner can reach the pension, without regard to the time the debt was contracted. There can, therefore, be no impairment of contract by the statute of this state just referred to.

II. The act of congress under which defendant's pension was granted contains this provision: "Sec. 4747. No sum of money, due or to become due to any pensioner, shall be liable to attachment, levy, or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension-office or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto ; but shall inure wholly to the benefit of such pensioner." See Rev. St. U. S., sec. 4747. It is obvious that this provision was intended for the benefit and protection of pensioners, and not wholly of the officers of the United States, in view of the fact that, under the decisions of the United States supreme court, money appropriated by the government to a citizen cannot be reached by any process to subject it to his debts until it is actually paid into the hands of the citizen. It was held in *Buchanan v. Alexander*, 4 How. 20, that, "so long as money remains in the hands of a disbursing officer, it is as much ¦the money of the United States as if it had not been drawn from the treasurer. Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects." Pensions are only paid to the pensioner in person, or upon checks payable to his order. Rev. St. U. S., sec. 4765. It is impossible, under the case just cited, to reach money of a pensioner by any process until it is paid to him. The provision above quoted, being an enactment of a prior decision, must be presumed to have had other purposes than the protection of the government officers ; for we will presume that congress knew that the officers were already fully protected by the decision of the supreme court. Indeed, the section quoted so declares in enacting that the pension "shall inure

wholly to the benefit of the pensioner." It is plain that protection to the pensioner is a purpose of the enactment, and it is equally plain that such protection was not against attempts to subject the pension to the seizure upon process before it had reached the hands of the pensioner; for that protection was fully secured by the decision of the United States supreme court. The protection to the pensioner intended by the statute clearly begins after the pension money reached the hands of the pensioner, and its character and extent is expressed by the declaration that the pension "shall inure wholly to the benefit of such pensioner." That declaration cannot mean simply and only that he is to hold the money as his property, subject to liability for his debts, as other property. He would have that right without the statute. We will not presume that congress, by a statute, would do the vain thing of conferring a right already possessed by the citizen. Nor can it mean that the money shall be protected from process; but that a homestead, which is recognized and protected under both national and state legislation, if bought with proceeds of a pension, shall not be subject to process. The pensioner attempts to have the "benefit" of a homestead by purchase with his pension money. If the homestead becomes liable for his debts, his pension does not "inure wholly to his benefit." I am brought to the conclusion by these and other reasons that, under the statutes of the United States, a person may hold a homestead purchased with his pension money, free from all debts, without regard to the time they were contracted.

III. That it is competent for congress to grant this protection cannot be doubted. The pension, while earned by invaluable patriotic service, is a gratuity on the part of the government in the sense that it is not granted under any contract. Surely the government may provide that its gratuity to its patriotic defenders, given as a meager recompense for health lost, blood shed, and lives sacrificed in defense of the Union and the constitution, shall "inure wholly to the benefit of

the pensioner." Shall not the sovereign giver of a gratuity prescribe how it shall be used and enjoyed? In granting homesteads, congress has exercised this sovereign authority, and exempted them from debts contracted prior to their acquisitions. Rev. St. U. S., sec. 2296. I have never heard these provisions questioned on the ground of want of authority in congress to enact them, and am aware of no principles upon which objections thereto can be based. In support of these views, see *Folschow v. Werner*, 51 Wis. 85, 7 N. W. Rep. 911.

I reach the conclusion that defendant's homestead is exempt from plaintiff's claim, which is in conflict with *Webb v. Holt*, 57 Iowa, 712, decided by a majority of this court. The decision in that case, in my opinion, ought to be overruled. See *Goble v. Stephenson*, 68 Iowa, 270.

ROTHROCK, J., concurs in this dissent.

### ON REHEARING.

ROTHROCK, J.—This appeal was considered by this court at a former term, and an opinion was filed reversing the judgment of the district court. A petition for rehearing was presented, and in view of the fact that two of our number dissented from the former opinion, and that a change had taken place in the membership of the court which might lead to a different result, we thought it advisable to entertain the petition, and reëxamine the questions in the case. Having done so, we have to announce that the former opinion must stand. A majority still adhere to it, with Mr. Justice BECK and the writer hereof dissenting as before.

REVERSED.