## In re WEISMAN.
### No. 56725.

District Court, S. D. New York.
Dec. 17, 1934.

Shaine & Weinrib, of New York City (Maurice L. Shaine and Edward J. Mallin, both of New York City, of counsel), for trustee.

Archibald Palmer, of New York City (Samuel Masia, of New York City, of counsel), for bankrupt.

PATTERSON, District Judge.

The case relates to life insurance policies on the bankrupt's life and raises questions,

some of which are old and some of which seem to be new.

The facts are not in controversy. The bankrupt filed a voluntary petition on March 7, 1933, and was adjudicated bankrupt the same day. In 1924, 1925, and 1926 he had taken out three insurance policies on his life, each for the sum of $10,000. The beneficiary named in the policies was his wife, with the right reserved in the bankrupt to change the beneficiary. Two of the policies originally were what are called "twenty payment life" policies; by the payment of premiums for twenty years the policies would be fully paid. The third was what is termed a "convertible" policy, meaning that at the end of five years the insured had several options, one of which was to continue the policy on a reduced premium payable for life.

In 1929 the bankrupt had all the policies placed on a "straight life" basis. This effected a considerable reduction in the annual premiums, but required payment of premiums throughout the life of the insured. In the case of the two "twenty payment life" policies, the change was effected by the delivery of new policies, which, however, bore the old numbers and the old dates and carried cash surrender values based on the dates of original issuance. In the case of the "convertible" policy, the bankrupt merely elected the option converting the policy to one on which the premium was payable for life.

At the time of bankruptcy one Benson had a claim of $8,700 against the bankrupt. This claim arose from a promissory note for $8,000, executed by the bankrupt in 1924 and payable to the order of one Freed. Freed negotiated the note to Benson in 1931. Benson sued the bankrupt on the note in 1932 and recovered judgment for $8,700.

The three policies had a cash surrender value of about $4,300 at bankruptcy. The trustee in bankruptcy brought a summary proceeding against the bankrupt to turn the policies over to him, so that he might realize on the cash surrender value. The bankrupt resisted on the ground that the policies were exempt under New York statutes. The referee, in an able opinion, held that the policies were not exempt, and that the trustee was entitled to the cash surrender value. The bankrupt petitioned for review of the referee's order.

It is the recognized rule, apart from local statute, that where the bankrupt has taken out insurance policies on his own life payable to another and in the policies has reserved to himself the right to change the beneficiary, the trustee in bankruptcy is entitled to the cash surrender value of the policies. By section 70a of the Bankruptcy Act (11 USCA § 110 (a)), all powers that the bankrupt might exercise for his own benefit pass to the trustee as part of the bankrupt estate, and the right to change the beneficiary in a life insurance policy is a power of this character. Whatever doubt once existed on the proposition was settled by the Supreme Court in Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143. The court there said: "Under such conditions to hold that there was nothing of property to vest in a trustee would be to make an insurance policy a shelter for valuable assets and, it might be, a refuge for fraud." 245 U. S. page 53, 38 S. Ct. 37. But exemptions under state law are recognized by the act (section 6, 11 USCA § 24), and a local statute may declare such policies exempt. There are two New York statutes relied on by the bankrupt in support of his contention that the policies are exempt from creditors' claims. The first is section 52 of the Domestic Relations Law (Consol. Laws N. Y. c. 14), which has been in force for a great many years and which in substance provides that a married woman may cause the life of her husband to be insured, and that on surviving him she will be entitled to receive the insurance money free from claims of creditors of her husband, to the extent that the insurance was purchased by premiums not exceeding $500 a year. The second is section 55-a of the Insurance Law, which became effective on March 31, 1927 (Consol. Laws N. Y. c. 28). This statute provides in substance that the beneficiary of a life insurance policy (other than the insured himself) shall be entitled to its proceeds and avails free from claims of creditors of the insured, "whether or not the right to change the beneficiary is reserved or permitted," subject to certain provisos of no present importance.

First, as to section 52 of the Domestic Relations Law. The New York courts have placed a broad construction on this statute. By its terms it applies only where the wife shall "cause the life of her husband to be insured." Where the husband himself takes out the insurance and pays the premiums, which of course is the usual situation, a fictitious agency is raised. The

husband is said to have effected the insurance as his wife's agent, although she may have known nothing of the matter until his death; the case is thus brought within the statute. Whitehead v. New York Life Ins. Co., 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 787; Wagner v. Thieriot, 203 App. Div. 757, 197 N. Y. S. 560, affirmed 236 N. Y. 588, 142 N. E. 295. The fiction worked well enough in earlier times when policies did not reserve to the insured the right to change the beneficiary. In such cases. the wife, as beneficiary, was for most purposes the owner of the insurance. But now the policy commonly contains a clause giving the insured the right to change the beneficiary,. and it is recognized that for practical purposes the insured is the owner. For his own benefit and without leave of the beneficiary he may obtain the cash surrender value, he may obtain loans, he may assign the policy for his debts, he may change the beneficiary. The interest of the beneficiary, whether wife or some one else, during the insured's life, is not vested in any real sense. What was said of revocable trusts in Burnet v. Guggenheim, 288 U. S. 280, 284, 53 S. Ct. 369, 370, 77 L. Ed. 748, is true here also: "While the powers of revocation stood uncanceled in the deeds, the gifts, from the point of view of substance, were inchoate and imperfect." The artificial agency is now referred to with the qualification that the husband as agent has the right to take away all the benefits from the wife as principal whenever he pleases. Wagner v. Thieriot, supra.

The courts have taken a realistic view of the matter when the insured becomes bankrupt. The Circuit Court of Appeals of this circuit has held in a line of cases that where the husband has taken out insurance in favor of his wife and has reserved the right to change the beneficiary, section 52 of the Domestic Relations Law does not touch the case. In re White, 174 F. 333, 26 L. R. A. (N. S.) 451 (C. C. A. 2); In re Samuels, 254 F. 775 (C. C. A. 2); In re Greenberg, 271 F. 258 (C. C. A. 2). While the point is not discussed in In re Messinger, 29 F.(2d) 158, 159, 68 A. L. R. 1205 (C. C. A. 2), the facts were the same as here, and the assumption was certainly made that the policy was not exempt under this statute. The Circuit Court of Appeals did not overrule all these cases in Re Reiter, 58 F.(2d) 631 (C. C. A. 2), which dealt with a Connecticut statute. Judge Coxe reviewed the authorities in Re Lipton (D. C.) 4 F. Supp. 799, and I am

in agreement with his summation of them. In re Ellis (D. C.) 1 F.(2d) 341, Judge Hazel in the Western district came to the same conclusion. There are no cases to the contrary in the New York courts.

The conclusion is that section 52 of the Domestic Relations Law does not bar the rights of a trustee in bankruptcy of the insured where the insured has reserved the power to change the beneficiary of the policy.

Second, as to section 55-a of the Insurance Law. This statute is far more comprehensive. It applies to all beneficiaries other than the insured, and there is no limit on the amount of the exemption. As if in recognition of the result under the older statute, it is here provided explicitly that the reservation by the insured of the right to change the beneficiary shall not impair the exemption. It was accordingly held in Re Messinger, supra, that where a bankrupt had made his wife the beneficiary and had reserved the right to change, the trustee in bankruptcy, by reason of section 55-a, could not reach the policy or its surrender value. But the Messinger Case also stands for the point that the act will not be construed retroactively and does not affect claims in existence on March 31, 1927. The New York Court of Appeals has also recently held that Insurance Law, § 55-a is not applicable to pre-existing claims. Addiss v. Selig, 264 N. Y. 274, 190 N. E. 490, 92 A. L. R. 1384.

The bankrupt says that the claim of Benson was not in existence until 1931, since he did not own the note prior to that time. But the note was a liability of the bankrupt as early as 1924. Freed, the original payee, held it until 1931, when he transferred it to Benson. It was a claim existing on March 31, 1927. In Freed's hands it was not affected by the exemption, and the claim did not lose anything by the later assignment to Benson. I am referred to no authorities on the point. It was held, however, in Ladd v. Dudley, 45 N. H. 61, that a note made by the defendant to one Kittredge prior to the effective date of a homestead exemption law was not subject to the exemption, despite the fact that it had not come into the plaintiff's hands, by indorsement of Kittredge, until after the effective date. The case here is analogous.

The bankrupt also claims that the three policies must be viewed as taken out in 1929. If this were true, they would undoubtedly be exempt. But it is plain that

the policies were taken out in 1924–1926. All that happened in 1929 was a modification in certain provisions. The fact that new pieces of paper were issued in 1929 as to two of the policies is of no moment. That was a mere change in the form of the contract.

The claim of Benson exceeded the cash surrender value of the policies. It follows that section 55-a does not bar the claim of the trustee in bankruptcy to the cash surrender value.

The order of the referee in favor of the trustee was right, and will be affirmed.