In re GORDON.

BROWN v. GORDON.

No. 337.

Circuit Court of Appeals, Second Circuit.

June 14, 1937.

584

John R. Vunk, of Patchogue, L. I., N. Y. (Harold Ashare, of Patchogue, L. I., N. Y., of counsel), for bankrupt-appellant and cross-appellee.

James G. Moore, of New York City (Albert H. Ruppar, of New York City, of counsel), for trustee-appellee and cross-appellant.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The questions before us on this appeal are whether the cash surrender values of four life insurance policies of which the wife of the bankrupt is the beneficiary, but in all of which the bankrupt reserved the right to change the beneficiary, are exempt from the claim of the trustee under section 55-a of the Insurance Law of the State of New York enacted on March 31, 1927 (Consol.Laws N.Y. c. 28).

Three of the policies (two issued by the Metropolitan Life Insurance Company and one by the Northwestern Mutual Life Insurance Company), having a total cash surrender value of $1,230.47, were issued prior to the enactment of section 55-a of the New York Insurance Law. If at that time there were creditors having valid claims, the policies were, to the extent of the above cash surrender value, assets which the trustee is entitled to collect for the benefit of those creditors. In re Messinger, 29 F.(2d) 158, 68 A.L.R. 1205 (C.C.A.2).

The remaining policy was issued by the New York Life Insurance Company under date of January 8, 1930, which is subsequent to the enactment of section 55-a supra, and had a cash surrender value of $1,330 at the date of bankruptcy.

The District Court held that the first three policies to the extent of the total cash surrender value of $1,230.47 were estate assets not within the exemption provided by the state statute, but that the policy of the New York Life Insurance Company, because issued after the enactment of section 55-a supra, was within the statutory exemption.

The bankrupt has appealed from so much of the order as denies exemption in respect to the cash surrender value of the first three policies, claiming that all four policies are exempt under section 55-a, and the trustee has appealed from so much of the order as held the policy issued by the New York Life Insurance Company exempt.

Appeal of the Bankrupt.

The bankrupt appeals from the portion of the order directing him to turn over the first three policies to the trustee or to pay the latter $1,230.47 as the cash surrender value thereof. He contends that the claim of the creditor Patchogue Citizens Bank & Trust Company was not such as to render the cash surrender value of $1,230.47 an asset which could not under our decision of In re Messinger, 29 F.(2d) 158, 68 A.L.R. 1205, lawfully be exempted by section 55-a supra. The reason given for taking this position is that neither the proof of claim nor the evidence shows an indebtedness of the bankrupt to the creditor antedating the enactment of section 55-a.

We are met at the outset with the objection to the bankrupt's argument that the question before us is one of fact which was resolved against the bankrupt by the court below. We are permitted by section 24b of the Bankruptcy Act, as amended, 11 U.S.C. A. § 47(b), under which this appeal was allowed, to review only questions of law. It is said, however, that the following considerations require a decision of the appeal in the bankrupt's favor: (1) The proof of debt sets forth no indebtedness antedating the statute; (2) the note relied on in the proof of debt succeeded other notes but they had been paid by the bankrupt; (3) the Patchogue Bank was a secured creditor and the trustee could not maintain a turnover proceeding without liquidating the security pursuant to section 57h of the Bankruptcy Act, 11 U.S.C.A. § 93(h).

■ There was evidence sufficient to justify the District Court in finding that the note held by the creditor for $23,847.65 succeeded earlier notes given for indebtedness which accrued prior to the enactment of section 55-a. The fact that these prior notes, except to the extent of $5,150, were marked "paid," does not require us to hold that the earlier indebtedness represented by these notes was extinguished. No agreement to cancel it was established, nor was such an agreement at all probable. Indeed, we think it was disproved. All the notes were simply evidence of loans, and the creditor was, therefore, entitled to take the position that the claim it relied on existed prior to the enactment of section 55-a. Jagger Iron Co. v. Walker, 76 N.Y. 521; Cohen v. Rossmoore, 225 App.Div. 300, 306, 233 N.Y.S. 196. The four notes marked "paid" were so marked merely to guard against future negotiation and not to extinguish pro tanto existing obligations. While the proof of claim contained a list of notes outstanding, the evidence disclosed the earlier origin of the indebtedness upon which the Patchogue Bank relies, and its claim may be treated as amended to conform to the proof. In re International Match Corporation, 69 F.(2d) 73 (C.C.A.2); Lewith v. Irving Trust Co., 67 F.(2d) 855 (C.C.A.2); In re Lynan, 127 F. 123 (C.C.A.2); In re Kessler, 184 F. 51 (C.C.A.2); and In re Basha, 200 F. 951 (C.C.A.2). The objection that the creditor was bound to liquidate its security and, as it has not done this, has failed to prove a valid claim for any excess is met because the claim relied on apparently is not one of the secured obligations and also because liquidation under section 57h, 11 U.S.C.A. § 93(h), is only necessary to prove claims in order to obtain a dividend. A creditor may resort to the cash surrender value of any life insurance policies of his debtor merely by proving that he was a creditor before any exemption statute was enacted.

■ The trustee can reach the cash surrender value of the first three policies, even though the proceeds after collection will ultimately pass to a particular creditor having claims antedating the enactment of section 55-a of the New York Insurance Law for the reason that the trustee represents all creditors. Theoretically there might be many such creditors whose claims against the cash surrender value would have to be marshaled in order that the asset in question might be properly shared among them.

For the foregoing reasons the order so far as respects the appeal by the bankrupt is affirmed.

Appeal of the Trustee in Bankruptcy.

The trustee in bankruptcy objects to the portion of the order holding that the policy of the New York Life Insurance Company is exempt from the claim of the Patchogue Bank on the ground that section 55-a of the New York Insurance Law, if applicable to the cash surrender value of that policy, would impair the obligation of contracts and thus would violate article 1, § 10, cl. 1, of the Constitution of the United States.

Section 55-a in so far as it is pertinent to the trustee's appeal reads as follows:

"*Rights of creditors and beneficiaries under policies of life insurance.* If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the bene-

ficiary or assignee shall predecease such person."

The court below sustained the exemption on the ground that the policy of the New York Life Insurance Company was not issued until after the exemption statute took effect, and held that, if the exemption is to be avoided, both the claims of creditors who seek to reach the cash surrender value and the policy itself must antedate the enactment. The trustee contends that it is enough for the indebtedness to precede the enactment and that a creditor is entitled to resort to "future acquisitions" of his debtor for payment of his claim, unless an exemption existed at the time when the debt was incurred, so that the debt can be said to have been contracted with the exemption in view. Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793; Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529.

It is generally said that an impairment of a creditor's rights must be substantial in order to come within the constitutional prohibition. Bronson v. Kinzie, 1 How. 311, 11 L.Ed. 143. Thus a workman's tools or a farmer's necessary implements may be within the protection of an exemption statute even as against prior creditors. Perhaps it may be reasonably argued that insurance policies ought to stand in a class by themselves, because of a fair doubt whether creditors are likely to lose anything through the issue to a debtor, after the passage of an exemption act, of an insurance policy in favor of a third person in which he retains a power of revocation. Whether the debtor here would have kept any part of the moneys expended in premiums, if he had not taken out insurance for the benefit of his wife, is perhaps a matter of speculation. It may be said that, if the chance of obtaining a policy which he might reasonably suppose to be exempt because of the terms of section 55-a of the New York Insurance Law had not existed, he might have lived on the moneys expended in premiums or might have taken out insurance payable to his wife without reserving any power of revocation or might have expended his earnings in other ways—in all of which cases they would have been unavailable to his creditors. On the other hand, it is problematical whether a debtor who retains a power of revocation under circumstances like the present does not do so because he is determined to keep control of the policy for all purposes and whether he would have acted thus, whether he had thought section 55-a applied or not. It seems entirely possible and perhaps probable that he would have saved his earnings and put them in the savings bank or otherwise have invested them, in case he had not taken out the insurance. In other words, the determining factors are too doubtful to enable us to say that creditors would lose no substantial right if such exemption statutes were held applicable.

But we find no decisions of the Supreme Court or of the highest courts of the state distinguishing between policies issued prior to the passage of exemption laws and those issued after. In Nelson v. McCrary, 60 Ala. 301, such a distinction was repudiated in respect to a homestead exemption where the land in question was purchased after the enactment of the statute creating the exemption. Johnson v. Fletcher, 54 Miss. 628, 28 Am.Rep. 388, is to the same effect, as also Foster v. Byrne, 76 Iowa, 295, 35 N. W. 513, 41 N.W. 22.

The following decisions relied on by the bankrupt are not in accord with our views: In re Weisman (D.C.) 10 F.Supp. 312, 314; In re Beach (D.C.) 8 F.Supp. 910, 911; In re Rosenberg-Oldstein Co. (D.C.) 236 F. 812, 813; Cecilian Operating Corporation v. Berkwit, 151 Misc. 814, 272 N. Y.S. 291.

If the distinction between policies taken before the enactment of the exemption statute and after it were tenable, we should expect that in the former contingency the courts would have allowed trustees in bankruptcy to reach only the cash surrender value at the date of the enactment and not the value accrued to the date of bankruptcy. Yet we believe the value at the time of bankruptcy has always been payable in those cases to the trustee. Bank of Minden v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L. Ed. 857; Addiss v. Selig, 264 N.Y. 274, 190 N.E. 490, 92 A.L.R. 1384; In re Kest, 78 F.(2d) 705 (C.C.A.2); In re Messinger, 29 F.(2d) 158, 68 A.L.R. 1205 (C.C.A.2); In re Heilbron's Estate, 14 Wash. 536, 45 P. 153, 35 L.R.A. 602.

In view of the general rule that statutes which may substantially impair the right of existing creditors are construed as not affecting the claims of such creditors, we cannot regard the New York exemption act as affecting the remedies of the Patchogue Bank. Many a man who becomes insolvent has little or nothing except the cash surrender value of an insurance policy, often of substantial worth. A distinction be-

tween policies issued before and after the passage of an exemption act is not tenable if in either case there are preexisting creditors. Such a distinction would be based upon mere speculation and, if indulged in, to justify an exemption would seem to involve a result against the general weight of authority. Indeed, it is hard to distinguish between an investment in life insurance and a deposit in a savings bank. W. B. Worthen Co. v. Thomas, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344, 93 A.L.R. 173; Bank of Minden v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857; Kener v. La Grange Mills, 231 U.S. 215, 34 S.Ct. 83, 58 L. Ed. 189; Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793; Gunn v. Barry, 15 Wall. 610, 21 L.Ed. 212; Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529; In re Messinger (C.C.A.) 29 F.(2d) 158, 68 A.L.R. 1205; In re Kest (C.C.A.) 78 F.(2d) 705; Addiss v. Selig, 264 N.Y. 274, 190 N.E. 490, 92 A.L.R. 1384; Nelson v. McCrary, 60 Ala. 301; Foster v. Byrne, 76 Iowa, 295, 35 N. W. 513, 41 N.W. 22; Dunn v. Stevens, 62 Minn. 380, 64 N.W. 924, 65 N.W. 348; The Homestead Cases, 22 Grat. (Va.) 266, 294, 12 Am.Rep. 507; Johnson v. Fletcher, 54 Miss. 628, 28 Am.Rep. 388; Rieger v. Wilson, 102 Mont. 86, 56 P.(2d) 176.

The order is so modified as to affirm the order of the referee in bankruptcy and to direct the bankrupt to turn over the policy of the New York Life Insurance Company to the trustee or pay the cash surrender value therefor amounting to $1330; otherwise it is affirmed.